UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| LEIDY ROMERO OROZCO,<br><br>Plaintiff,<br><br>-against-<br><br>SOFIAS143 INC. d/b/a SOFIA'S OF LITTLE ITALY, and ANDRES DOMINGUEZ<br><br>Defendants. | : | **No. 26 Civ. 9675**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Leidy Romero Orozco ("Plaintiff" or "Romero Orozco"), by her attorneys Pechman Law Group PLLC, complaining of Defendants Sofias143 Inc. d/b/a Sofia's of Little Italy ("Corporate Defendant" or "Sofia's"), and Andres Dominguez (collectively, "Defendants"), alleges:

## NATURE OF THE ACTION

1. Romero Orozco worked as a busser and food runner at Sofia's, an Italian restaurant on Mulberry Street in Manhattan, but was not paid at the statutory minimum wage rate or at the correct overtime rate for hours worked over forty per workweek. Defendants also failed to provide Romero Orozco with: (1) spread-of-hours pay when she worked shifts spanning more than ten hours; (2) a wage notice at her time of hire and when her wage rate changed; and (3) accurate wage statements with each payment of wages.

2. Defendants further subjected Romero Orozco to a discriminatory and hostile work environment based on her sex, including a sustained pattern of sexual harassment by Sofia's management and staff, which Defendants failed to remedy despite Romero Orozco's repeated complaints. Romero Orozco was forced her to resign due to

the hostile and discriminatory work environment.

3. Romero Orozco brings this action to recover her unpaid minimum and overtime wages, spread-of-hours pay, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law § 190 *et seq.* ("NYLL"), and the NYLL's Wage Theft Prevention Act, NYLL §§ 195, 198 ("WTPA"). Romero Orozco further brings this action seeking monetary damages and other relief to redress Defendants' unlawful discrimination under the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL").

## JURISDICTION

4. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and it has supplemental jurisdiction over Plaintiff's NYLL, NYSHRL, and NYCHRL claims pursuant to 28 U.S.C. § 1367.

## VENUE

5. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because the events and omissions giving rise to Plaintiff's claims occurred at Sofia's, which is located and operated by Defendants within this District.

## THE PARTIES

**Plaintiff Leidy Romero Orozco**

6. Romero Orozco resides in Maspeth, New York.

7. Defendants employed Romero Orozco as a busser and food runner at Sofia's from approximately September 18, 2023, to August 12, 2026.

**Defendant Sofias143 Inc.**

8. Defendant Sofias143 Inc. is a New York corporation that owns, operates,

and does business as Sofia's of Little Italy at 143 Mulberry Street, New York, New York 10013.

9. Sofias143 Inc. is an "enterprise engaged in commerce" within the meaning of the FLSA.

10. Sofias143 Inc. has employees engaged in commerce or in the production of goods for commerce, or handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

11. In the three years preceding the filing of this Complaint, Sofias143 Inc. has had an annual gross volume of sales made or business done in excess of $500,000.

12. Sofias143 Inc. is an employer within the meaning of the FLSA and NYLL and employed Romero Orozco.

**Defendant Andres Dominguez**

19. Defendant Andres Dominguez is an owner and principal of Sofia's.

20. Throughout Romero Orozco's employment, Dominguez held power and authority over personnel decisions at Sofia's, including the power to hire and fire employees, set employee schedules, set employee wage rates, retain time and wage records, and otherwise control the terms and conditions of employees' employment.

21. Throughout Romero Orozco's employment, Dominguez was regularly present at Sofia's directing the work duties of employees.

22. Dominguez paid Romero Orozco's wages.

23. Dominguez, together with general manager Diego Rangel, set Romero Orozco's schedule and would contact her directly regarding schedule changes.

24. Dominguez exercised sufficient control over Sofia's operations and Romero Orozco's employment to be considered Romero Orozco's employer under the FLSA, NYLL, NYSHRL, and NYCHRL.

## FACTUAL ALLEGATIONS

**Romero Orozco's Hours Worked and Pay**

25. Throughout her employment, Romero Orozco worked as a busser and food runner at Sofia's.

26. Romero Orozco regularly worked double shifts on Thursdays and Saturdays, from approximately 10:00 a.m. to 11:30 p.m. or when Sofia's closed for the night, and on Fridays from approximately 4:00 p.m. to 11:30 p.m. or when Sofia's closed for the night, for a total of approximately thirty-four and half hours per workweek.

27. Romero Orozco sometimes worked more than forty hours per workweek. For example, during the workweek ending July 26, 2026, Romero worked 49 hours.

28. Throughout her employment, Defendants paid Romero Orozco approximately $11.35 per hour, plus tips, for all hours worked per workweek. Romero Orozco's regular wage rate of $11.35 per hour fell below the applicable statutory minimum wage rate for each hour worked.

29. From September 2023 through approximately January 2026, Defendants paid Romero Orozco for up to thirty-three hours of work per workweek only, even though she regularly worked more hours per workweek.

30. After Romero Orozco asked for a punch in and out pin in approximately January 2026, Defendants began paying Romero Orozco for all the hours she worked.

31. Defendants applied a tip credit against Romero Orozco's wages but failed to provide her with the written notice of the tip credit required by 12 N.Y.C.R.R. § 146-2.2.

32. Defendants failed to pay Romero Orozco overtime pay at the correct rate for hours worked over forty per workweek. Rather than calculate her overtime rate as on and one-half times her regular rate before subtracting any tip credit, Defendants

improperly multiplied her tip credit regular rate by one and one-half. For example, for the workweek ending July 26, 2026, Defendants paid Romero Orozco a regular rate of $11.35 per hour for forty hours worked and an overtime rate of only $17.03 per hour for nine overtime hours worked:

| | |
|---|---|
| Employee<br>LEIDY R. ROMERO<br>SSN<br>XXX-XX-XXXX<br>Check Number<br>210337<br>Check Date 7/26/2026 Period Begin 7/20/2026 Period End 7/26/2026<br>W/H Status<br>Federal: Married<br>State: NY: 0-Married | Employer<br>SOFIAS143 INC.<br>143 MULBERRY ST<br>NEW YORK, NY 10013<br>(212) 219-9799 |

**Earnings**

| Description | Rate | Hours | Current | Year to Date |
|---|---|---|---|---|
| Reg wages | 11.35 | 40.00 | 454.00 | 5811.20 |
| OT wages | 17.03 | 9.00 | 153.23 | 153.23 |
| Tips (paid) | | | 1203.00 | 8614.00 |
| TOTAL GROSS PAY | | 49.00 | 1810.23 | 14578.43 |

**Taxes, Deductions and Adjustments**

| Description | Current | Year to Date |
|---|---|---|
| Fed Inc Tax | 133.38 | 357.61 |
| Soc Sec Tax | 112.23 | 903.86 |
| Medicare Tax | 26.25 | 211.38 |
| State Inc Tax | 86.86 | 545.23 |
| NYC | 66.40 | 411.24 |
| NY PFL | 7.82 | 60.82 |
| TOTAL DEDUCTIONS | 432.94 | 2490.14 |
| NET PAY | 1377.29 | 12088.29 |

33. Defendants did not pay Romero Orozco spread-of-hours pay of one additional hour's pay at the basic minimum hourly wage rate on days when she worked shifts spanning more than ten hours.

34. Defendants did not provide Romero Orozco with a wage notice at her time of hire or when her wage rate changed.

35. Throughout her employment, Defendants paid Romero Orozco's wages without accurate wage statements reflecting, *inter alia*, her total hours worked and the regular and overtime rates of pay due to her.

36. Defendants' failure to furnish compliant wage notices and accurate wage statements directly contributed to the wage underpayments suffered by Romero Orozco, because the lack of accurate information regarding her total hours worked per workweek and her entitlement to overtime wages at the legally required rate hindered her ability to

track the amounts owed to her and to challenge Defendants' unlawful wage payment practices sooner.

37. Had Romero Orozco received a compliant wage notice and accurate wage statements, she would have realized that she was being underpaid and would have acted sooner to ensure proper payment of her wages.

**Sexual Harassment and Hostile Work Environment**

41. Throughout Romero Orozco's employment, Sofia's management and staff subjected her to a sustained pattern of sexual harassment and a hostile work environment because of her sex.

42. In or around October 2023, Sofia's manager, Diego Rangel, told Romero Orozco that he wanted "to measure her ass" and asked her for permission to measure it. Rangel had a measuring tape, told Romero Orozco that everyone in the restaurant had to measure their buttocks, and then made comments about the size of Romero Orozco's buttocks.

43. In or around December 2023 or January 2024, Francisco "Frank" Albarracin, a server at Sofia's, entered the restroom while Romero Orozco was inside. Afterward, Frank told everyone at Sofia's, including the general manager, Rangel, and Defendant Dominguez, that he had seen Romero Orozco's "*cucaracha*," a graphic and degrading reference to her genitalia. Moreover, Albarracin told Romero Orozco's coworkers that he had seen her "*cucaracha*" and that it was "hairy." This incident was widely discussed among Sofia's staff, and Defendants took no corrective action.

44. In or around January or February 2025, Albarracin told Romero Orozco, "We're in America. We speak English here," when she attempted to speak Spanish with a Spanish-speaking customer.

45. In or around February 2025, Albarracin inserted his finger into the anus of

another coworker, Steven (last name unknown), and then placed his finger near Romero Orozco's face and directed her to smell it. In response, Romero Orozco told Albarracin that she "didn't like those games." As Romero Orozco told Albarracin this, Rangel walked by.

46. Romero Orozco complained about this incident to Defendant Dominguez as well as Rangel, however, Defendants took no corrective action.

47. At work, Albarracin, who is Gay, often showed Romero Orozco his dating app profile, where he showed Romero Orozco pictures of other naked men.

48. Defendant Dominguez engaged in his own pattern of sexual harassment of Romero Orozco throughout her employment

49. Throughout her employment, Dominguez grabbed Romero Orozco's waist and made comments like "*esa cintura rica*" (that sexy waist). Romero Orozco often protested his advances, and even punched him on his chest once.

50. One Saturday during Summer 2025, Dominguez brought his wife and son to Sofia's. Dominguez told his son that Romero Orozco would someday be his next mom. In response, Romero Orozco protested that Dominguez did not even respect his own son.

51. In or around May 2026, Dominguez attempted to physically corner Romero Orozco in the basement of Sofia's in an effort to kiss her. Romero Orozco warned Dominguez that she would take action if he touched her. Dominguez disregarded her warning and touched her waist without her consent.

52. Throughout her employment, when Dominguez arrived at Sofia's, he would touch Romero Orozco's waist or try to kiss her.

53. On multiple occasions throughout her employment, Dominguez made unwanted and sexually explicit comments to Romero Orozco, including telling her that he wanted to "kiss her," asking "when can we can do it," and telling her, "I want to give

you kisses in your lips," while looking at her crotch. Dominguez would add that he knew Romero Orozco liked that he said those things to her even though Romero Orozco protested his advances and comments.

54. On one occasion, Romero Orozco asked Dominguez if he only knew how to speak about sex and proposed reading an intellectual book to discuss. In response, Dominguez proposed reading the Kama Sutra, an ancient sex manual.

55. Romero Orozco complained repeatedly to Dominguez and to Rangel about the sexual harassment she was experiencing. Despite her complaints, Defendants took no meaningful corrective action.

56. At no point during Romero Orozco's employment did Defendants provide any anti-harassment training or implement any policy to address sexual harassment in the workplace.

57. The cumulative effect of the sexual harassment, Defendants' refusal to address it, and the resulting hostile work environment forced Romero Orozco to resign her employment on August 12, 2026:

> *Buenas tardes, Diego:*
> *Por medio de la presente comunico formalmente mi renuncia a mi puesto de trabajo, efectiva a partir de hoy, 12 de agosto de 2026.*
>
> *He tomado esta decisión debido a los constantes maltratos que he recibido en mi lugar de trabajo, así como a las situaciones de acoso sexual que he sufrido a manos de Andrés y Frank. Estas circunstancias han creado un ambiente de trabajo en el que ya no me siento cómoda ni en condiciones de continuar trabajando.*
> *Asimismo, los cambios en mis horarios y condiciones de trabajo ocurridos recientemente han contribuido a mi decisión de no regresar.*
> *Por estas razones, doy por terminada mi relación laboral a partir de hoy.*
> *Atentamente,*
> *Leidy Romero*

---

> English:
>
> Good afternoon, Diego, Please accept this letter as formal notice of my resignation from my position, effective today, August 12, 2026. I have made

> this decision because of the ongoing mistreatment I have experienced in the workplace, as well as the sexual harassment I have suffered at the hands of Andrés and Frank. These circumstances have created a work environment in which I no longer feel comfortable or able to continue working. In addition, the recent changes to my schedule and working conditions have contributed to my decision not to return. For these reasons, I am ending my employment effective today.
> Sincerely, Leidy Romero

58. Defendants' unlawful conduct has caused Romero Orozco severe emotional distress, including nightmares and anxiety, humiliation, and financial harm.

**FIRST CLAIM**
**(NYLL - Unpaid Minimum Wages)**

51. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

52. Defendants are employers within the meaning of the NYLL §§ 190, 651(6), 652, and supporting New York State Department of Labor ("NYDOL") regulations, and employed Plaintiff.

53. The NYLL and its supporting regulations, including 12 N.Y.C.R.R. § 146-1.2, require employers to pay employees at least the minimum wage for each hour worked up to forty per workweek.

54. At points during her employment, Defendants failed to pay Plaintiff any wages at all for some of the hours she worked up to forty per workweek.

55. Because Defendants failed to provide Plaintiff with the tip-credit notice required by 12 N.Y.C.R.R. § 146-2.2, they were not entitled to apply a tip credit against Plaintiff's wages, and Plaintiff was entitled to receive the full applicable minimum wage rate for each hour worked.

56. Defendants failed to pay Plaintiff the minimum wages to which she was entitled under the NYLL and its supporting regulations.

57. Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff minimum wages.

58. As a result of Defendants' violations of the NYLL, Plaintiff is entitled to recover her unpaid minimum wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

**SECOND CLAIM**
**(FLSA - Unpaid Overtime Wages)**

58. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

59. Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiff.

60. Defendants were required to pay Plaintiff one and one-half (1½) times her regular hourly rate for all hours worked in excess of forty hours per workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq.*

61. Defendants failed to pay Plaintiff the overtime wages to which she was entitled under the FLSA.

62. Defendants willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff the proper overtime wage rate.

63. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to Plaintiff's compensation.

64. As a result of Defendants' violations of the FLSA, Plaintiff is entitled to recover her unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

**THIRD CLAIM**
**(NYLL - Unpaid Overtime Wages)**

65. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

66. Under the NYLL and supporting NYDOL regulations, including 12 N.Y.C.R.R. § 146-1.4, Defendants were required to pay Plaintiff one and one-half (1½)

times her regular rate of pay, which shall not be less than the minimum wage rate, for all hours worked over forty per workweek.

67. When an employer takes a tip credit toward the basic minimum hourly rate, the overtime rate must be the employee's regular rate of pay before deducting any tip credit, multiplied by one and one-half, minus the tip credit. It is a violation of the overtime requirement for an employer to deduct the tip credit first and then multiply the reduced rate by one and one-half.

68. As set forth in this Complaint, Defendants were not entitled to take a tip credit against Plaintiff's wages.

69. Defendants failed to pay Plaintiff the overtime wages to which she was entitled under the NYLL and its supporting regulations.

70. Defendants willfully violated the NYLL and its supporting regulations by knowingly and intentionally failing to pay Plaintiff overtime wages.

71. As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover her unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs.

**FOURTH CLAIM**
**(NYLL - Spread-of-Hours Pay)**

71. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

72. Defendants willfully failed to pay Plaintiff additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which she worked shifts spanning more than ten hours, in violation of the NYLL and its supporting NYDOL regulations, including 12 N.Y.C.R.R. § 146-1.6.

73. As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover her unpaid spread-of-hours pay, pre- and post-judgment interest, and

reasonable attorneys' fees and costs.

**FIFTH CLAIM**
**(NYLL WTPA - Failure to Provide Wage Notices)**

74. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

75. The NYLL's WTPA requires employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

76. In violation of NYLL § 195(1), Defendants failed to furnish Plaintiff, at the time of hiring or whenever her rate or rates of pay changed, with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

77. As a result of Defendants' violations of NYLL § 195(1), Plaintiff is entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-b).

**SIXTH CLAIM**
**(NYLL WTPA - Failure to Provide Accurate Wage Statements)**

78. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

79. The NYLL's WTPA requires employers to provide employees with an accurate wage statement with each payment of wages.

80. Defendants failed to furnish Plaintiff, with each payment of wages, with a statement accurately listing: the rate or rates of pay and basis thereof, whether paid by

the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages, in violation of NYLL § 195(3).

81. As a result of Defendants' violations of NYLL § 195(3), Plaintiff is entitled to recover statutory damages and reasonable attorneys' fees and costs, pursuant to NYLL § 198(1-d).

**SEVENTH CLAIM**
**(NYSHRL - Sex Discrimination and Hostile Work Environment)**

82. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

83. At all relevant times, Defendants were Plaintiff's employer as defined by the NYSHRL, N.Y. Exec. Law § 292(5).

84. Plaintiff is protected under the NYSHRL from discrimination and harassment based on sex.

85. As described herein, Defendants subjected Plaintiff to unwelcome sexual harassment and a hostile work environment because of her sex, and thereby discriminated against Plaintiff in the terms, conditions, and privileges of her employment, in violation of N.Y. Exec. Law § 296(1).

86. Defendants' discriminatory conduct forced Plaintiff to resign, constituting a constructive discharge.

87. Defendant Dominguez is individually liable under the NYSHRL because he directly participated in the unlawful discriminatory conduct and because he aided, abetted, incited, compelled, or coerced the unlawful discriminatory conduct, in violation of N.Y. Exec. Law § 296(6).

88. As a direct and proximate result of Defendants' unlawful and willful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered monetary and economic damages, including but not limited to loss of past and future income, compensation, and benefits.

89. As a direct and proximate result of Defendants' unlawful and willful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered mental anguish and emotional distress, including but not limited to humiliation, embarrassment, loss of self-esteem, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages.

90. Defendants' unlawful discriminatory conduct constitutes malicious, willful, and wanton violations of the NYSHRL for which Plaintiff is entitled to an award of compensatory and punitive damages.

**EIGHTH CLAIM**
**(NYCHRL - Sex Discrimination and Hostile Work Environment)**

99. Plaintiff repeats and incorporates all foregoing paragraphs by reference.

100. At all relevant times, Defendants were Plaintiff's employer as defined by the NYCHRL, N.Y.C. Admin. Code § 8-102.

101. Plaintiff is protected under the NYCHRL from discrimination and harassment based on gender, which includes actual or perceived sex.

102. As described herein, Defendants subjected Plaintiff to unwelcome sexual harassment and a hostile work environment and treated her less well than other employees because of her gender, in violation of N.Y.C. Admin. Code § 8-107(1).

103. Defendants' discriminatory conduct forced Plaintiff to resign, constituting a constructive discharge.

104. Dominguez is individually liable under the NYCHRL because he directly

participated in the unlawful discriminatory conduct and because he aided, abetted, incited, compelled, or coerced the unlawful discriminatory conduct, in violation of N.Y.C. Admin. Code § 8-107(6).

105. As a direct and proximate result of Defendants' unlawful and willful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered monetary and economic damages, including but not limited to loss of past and future income, compensation, and benefits.

106. As a direct and proximate result of Defendants' unlawful and willful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered mental anguish and emotional distress, including but not limited to humiliation, embarrassment, loss of self-esteem, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages.

107. Defendants' unlawful discriminatory conduct constitutes malicious, willful, and wanton violations of the NYCHRL for which Plaintiff is entitled to an award of compensatory and punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

a. declare that Defendants have violated the minimum wage provisions of the NYLL and supporting regulations;

b. declare that Defendants have violated the overtime wage provisions of the FLSA, NYLL, and supporting regulations;

c. declare that Defendants have violated the spread-of-hours provision of the NYLL and supporting regulations;

d. declare that Defendants have violated the wage notice and wage statement provisions of the NYLL's WTPA;

e. declare that Defendants' violations of the FLSA and NYLL were willful;

f. declare that Defendants have engaged in unlawful discrimination and retaliation in violation of the NYSHRL and NYCHRL;

g. enjoin and permanently restrain Defendants from further violations of the FLSA and NYLL;

h. award Plaintiff damages for unpaid minimum and overtime wages and spread-of-hours pay;

i. award Plaintiff liquidated damages in an amount equal to the total amount of wages found to be due pursuant to the FLSA and NYLL;

j. award Plaintiff statutory damages as a result of Defendants' failure to furnish her with wage notices and accurate wage statements as required by the NYLL's WTPA;

k. award Plaintiff damages under the NYSHRL and NYCHRL, including monetary and economic damages, compensatory damages, emotional distress damages, and punitive damages;

l. award Plaintiff pre- and post-judgment interest;

m. award Plaintiff reasonable attorneys' fees and costs pursuant to the FLSA, NYLL, NYSHRL, and NYCHRL; and

n. award such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

Dated: New York, New York
November 4, 2026

PECHMAN LAW GROUP PLLC

By: ______________________________

Louis Pechman
Miguel Tapia Colin
Pechman Law Group PLLC
488 Madison Avenue, 17th Floor
New York, New York 10022
Tel.: (212) 583-9500
pechman@pechmanlaw.com
tapiacolin@pechmanlaw.com

*Attorneys for Plaintiff*